611 F.2d 474
 Frank LENTINO and Perry Flame, Trustees of the Teamsters
Local 158 Severance Pay Plan, Appellants,
v.
FRINGE EMPLOYEE PLANS, INC., Fringe Programs, Inc., 377
Fifth Avenue, New York, New York 10016 and Howard Casper and
Mark Muller, Individually and trading as Casper & Muller, a
partnership, and Jack Miller, Ray A. Oates, Max Cohen,
Harold Kapp and Robert G. Sloane, Individually and as former
trustees of the Teamsters Union 158 Severance Pay Plan, Appellees,
v.
J. B. JACKSON et al. (Third-party Defendants).
 No. 78-1110.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 4, 1979.
Decided Dec. 18, 1979.
 
 Kenneth S. Hall (argued), Philadelphia, Pa., for appellants.
 R. M. Jordan (argued), Robert F. Roach, White & Williams, Philadelphia, Pa., for appellees.
 Before ADAMS, HUNTER, and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This is an appeal from the grant of a Rule 50(a) motion for a directed verdict.[1] Appellants, plaintiffs below, contend that the directed verdict was improper because it was granted prior to the close of plaintiffs' evidence. We conclude that appellants were not prejudiced by the exclusion of the final item in their case and affirm the order of the district court.
 
 
 2
 Plaintiffs are the current trustees of the Employee Severance Pay Plan of Teamsters Local 158 (the Plan), a plan designed to provide benefits to employees upon the termination of their employment. The defendants are Fringe Employee Plans, Inc. (Fringe), the drafters and administrators of the Plan, Mark Muller, legal counsel to the Plan, and his law partner, Howard Casper.[2]
 
 
 3
 The Plan, as set forth in a collective bargaining agreement between employers and Teamsters Local 158, was to provide that an inception employee, one employed at the time an employer entered the Plan, would receive, at the time of his severance, 100% Of all employer contributions made on his behalf. A non-inception employee would receive, at the time of his severance, a smaller percentage of employer contributions made on his behalf; the difference would be used to pay for costs of the Plan. The Plan actually drafted by Fringe, however, required all employees, including inception employees, to bear the cost of administering the Plan through pro-rata deductions from their benefits.
 
 
 4
 Muller's first task as counsel for the Plan was to submit the drafted plan to the IRS for approval. IRS approval would insure that the employers could deduct contributions to the plan as business expenses. In December, 1971, the IRS approved the plan as drafted.
 
 
 5
 The trustees of the plan, relying on the initial collective bargaining agreement and on materials from Fringe, in its capacity as plan administrator, proceeded to pay out 100% Of employer contributions to severed inception employees, contrary to the provisions of the actual plan. The error was finally discovered in mid-1973, during an audit of the Plan. As a result of the discovery, all payments were suspended until August 8 of that year when the trustees met and, on the recommendation of Fringe and Muller, voted to resume 100% Payouts and to seek to have an amended plan approved by the IRS. Muller was to submit this amended plan, which included a 100% Payout provision. Although 100% Payouts continued, the amended Plan was never submitted for IRS approval. In 1975, Muller suggested delaying submission of the amended Plan until the IRS ruled on a similar plan, that of Local 463, then under consideration by the Service. Eventually, the IRS disapproved Local 463's plan. Prior to that time, Muller resigned as Plan Counsel. Subsequently, the Plan was terminated.
 
 
 6
 Plaintiffs sued, alleging that all defendants had breached fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1381, 1109 (1976). Plaintiffs also alleged legal malpractice against attorneys Muller and Casper.
 
 
 7
 On the morning of trial, Fringe failed to appear and a default judgment was entered. At this time, plaintiffs, recognizing their inability to prove the existence of a fiduciary relationship, dropped their ERISA allegations against the lawyers and proceeded on the malpractice claim alone. Defendants Casper and Muller promptly moved for dismissal for want of subject matter jurisdiction. The motion was denied.
 
 
 8
 The plaintiffs advance two theories of malpractice. First, that Muller's advice to continue 100% Payout was negligent. Second, that the subsequent failure to submit the amended plan to the IRS constituted malpractice. At the end of its case, plaintiffs, over objection, sought to introduce the Local 463 plan into evidence, purportedly to show how the Local 158 plan would have fared had it been submitted to the IRS for consideration. The district court inquired whether plaintiffs intended to introduce expert testimony to establish the appropriate standard of care and to explain the relationship between the two plans. Plaintiffs answered in the negative, indicating that following the admission of the Local 463 plan their malpractice case would be closed. The district court granted defendants' motion for directed verdict. Plaintiffs appeal only the dismissal of the malpractice claim against Muller.JURISDICTION
 
 
 9
 Before examining the merits of plaintiffs' appeal, we must address the threshold question of whether the district court properly exercised federal subject matter jurisdiction over the malpractice claim against Muller. Appellant asserts two grounds for jurisdiction: diversity and pendent jurisdiction.
 
 
 10
 The assertion of diversity is frivolous and may be summarily dismissed. Allegations of the citizenship of all parties to the lawsuit must appear in the complaint. See, e. g., Guerrino v. Ohio Casualty Ins. Co., 423 F.2d 419, 421 (3d Cir. 1970). In this case, the complaint contains no such allegations. Nor does the trial record contain any evidence of the citizenship of the plaintiffs or the defendants.
 
 
 11
 There are, however, two possible bases of pendent jurisdiction in this case. First, the malpractice claim may be pendent to the ERISA claim against Muller for breach of fiduciary duty. This will be designated "pendent jurisdiction." Second, the malpractice claim may be pendent to the ERISA claim against Fringe. This will be designated "pendent-party jurisdiction." Unfortunately, it is impossible to determine on which of these grounds the district court based jurisdiction.[3] Accordingly, we will first address pendent jurisdiction. Because of our disposition of that issue it will be unnecessary to address pendent party jurisdiction.
 
 PENDENT JURISDICTION
 
 12
 Pendent jurisdiction, the ability of a federal court to hear a jurisdictionally insufficient claim which is linked to a jurisdictionally sufficient claim, is grounded in the interest of both the parties and the judicial system in having all of the claims between litigants both federal and state, resolved in one suit. See Rosado v. Wyman, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). It is, of course, necessary to reconcile this goal with the limits of the constitutional grant of federal jurisdiction to cases arising under federal law. U.S.Const., Art. III, § 2. It has long been held, however, that the Article III grant is broader than merely a grant over federal "claims" but encompasses all claims in "cases" arising under federal law. See Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 820, 6 L.Ed. 204 (1824).
 
 
 13
 In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court described those situations in which it is proper for a federal court to exercise pendent jurisdiction. Federal courts have the constitutional Power to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court. 383 U.S. at 725, 86 S.Ct. 1130. Even if these constitutional requirements are met, the court has broad discretionary powers to decline pendent jurisdiction after considering judicial economy, convenience, fairness to the parties, and comity. Id. at 726, 86 S.Ct. 1130.
 
 
 14
 Constitutional power to adjudicate a pendent claim is ordinarily to be determined by reference to the pleadings, not on the facts as they may eventually be established. Elberti v. Kunsman, 376 F.2d 567, 568 (3d Cir. 1967). See United Mine Workers v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Knuth v. Erie-Crawford Dairy Coop. Ass'n, 395 F.2d 420, 426 (3d Cir. 1968), Cert. denied, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973). In the instant case plaintiffs alleged a substantial federal claim. Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) (1976), defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of (a) plan" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." Section 409 of the Act, 29 U.S.C. § 1109, creates liability for breach of fiduciary duty. Section 404, 29 U.S.C. § 1104, defines the standard of care which fiduciary must exercise "with respect to a plan." The complaint charged that defendant Muller was a fiduciary as defined by 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), that he advised the trustees of the Plan to continue to make 100% Payments in violation of the trust agreement, and that he failed to amend the Plan to conform with the payments being made, as he had represented to the trustees that he would. The allegations certainly stated a substantial federal claim. Cf. Hagans v. Levine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (defining constitutional insubstantiality as "wholly insubstantial" and "obviously frivolous"). It is equally clear that the malpractice claim against Muller derives from the same nucleus of facts as the ERISA claim. The claims are merely alternate theories of recovery based on the same acts of Muller: his advice to continue the 100% Payouts and his failure to submit the amended Plan to the IRS. At the pleading stage, therefore, the district court had the constitutional power to adjudicate the malpractice claim against Muller.
 
 
 15
 The pre-trial decision by plaintiff not to pursue his claim that Muller was a fiduciary, thereby eliminating the federal ERISA claim against Muller, did not deprive the court of constitutional power to adjudicate the pendent claim. This was merely a factor to be considered by the district court in its discretionary decision to keep or dismiss the claim. See, e. g., Rosado v. Wyman, 397 U.S. 397, 402-04, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969);[4] Transok Pipeline Co. v. Darks, 565 F.2d 1150 (10th Cir. 1977); Nolan v. Meyer, 520 F.2d 1276 (2d Cir. 1975); Gray v. International Ass'n of Heat & Frost Insulators Local 51, 447 F.2d 1118, 1120 (6th Cir. 1971). In this case, however, it is unclear whether the district court ever reached this question. It is as likely that the court accepted jurisdiction over the malpractice claim on the closely related doctrine of pendent party jurisdiction.[5]
 
 
 16
 We do not believe, however, that we must decide upon which of its jurisdictional powers the district court relied. Even if we assume that the district court based jurisdiction over the malpractice claim on pendent-party jurisdiction without expressing an opinion as to the propriety of pendent jurisdiction based on the ERISA claim against Muller, we think it proper that this case should be reviewed as if the district court exercised its discretion to exercise pendent jurisdiction.[6] We reach this conclusion in light of both the policies underlying pendent jurisdiction, particularly the saving of invested judicial energy, See Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969), and the fact that this case has already been disposed of on the merits. Accordingly, we will decline to accept pendent jurisdiction only if we find that such an exercise would have been an abuse of discretion.
 
 
 17
 In the instant case, the ERISA claim against Muller was not dropped until the morning of trial. The parties were prepared to proceed and witnesses were present. Moreover, the case had already consumed more than a year of pretrial proceedings including all discovery and numerous motions and conferences. We believe that the district court could properly have concluded that under these facts, the interests of convenience and judicial economy outweighed the state interest in adjudicating its own claims. See Transok Pipeline Co. v. Darks, 565 F.2d 1150, 1155 (10th Cir. 1977), Cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); Gray v. International Ass'n of Heat and Frost Insulators Local 51, 447 F.2d 1118, 1120 (6th Cir. 1971). We therefore conclude that pendent jurisdiction was proper in this case.[7]
 
 THE MERITS
 
 18
 We now turn to the merits of Appellants' contention that involuntary dismissal of their malpractice claim was improperly granted. The district court ordered the dismissal when plaintiffs' attorney represented that he would not present expert testimony as a part of his case.
 
 
 19
 The standard of care in Pennsylvania malpractice cases is measured by the skill generally possessed and employed by practitioners of the profession. See Incollingo v. Ewing, 444 Pa. 263, 276 n. 6, 282 A.2d 206, 214 n. 5a (1971); Smith v. Yohe, 412 Pa. 94, 99, 194 A.2d 167, 170 (1963); National Cash Register v. Haak, 233 Pa.Super. 562, 335 A.2d 407 (1975). Expert testimony is required to establish the relevant standard and whether the defendant complied with that standard, Chandler v. Cook, 438 Pa. 447, 265 A.2d 794 (1970); Lambert v. Soltis, 422 Pa. 304, 221 A.2d 173 (1966); National Cash Register v. Haak, 233 Pa.Super. 562, 335 A.2d 407 (1975), except where the matter under investigation is so simple, and the lack of skill so obvious, as to be within the range of the ordinary experience and comprehension of non-professional persons. Smith v. Yohe, 412 Pa. 94, 194 A.2d 225 (1970); Lambert v. Soltis, 422 Pa. 304, 221 A.2d 173 (1966). The district court applied this rule in the instant case.[8]
 
 
 20
 There have been sweeping statements in Pennsylvania cases that the requirement of expert testimony applies to malpractice actions against members of all professions. See Powell v. Risser, 375 Pa. 60, 65, 99 A.2d 454, 456 (1953); Bierstein v. Whitman, 360 Pa. 537, 541, 62 A.2d 843, 845 (1949). Moreover, the requirement has been applied to both dentists, See e.g., Lambert v. Soltis, 422 Pa. 304, 221 A.2d 173 (1966), and architects, See National Cash Register v. Haak, 233 Pa.Super. 562, 335 A.2d 407 (1975), as well as to doctors, See, e.g., Chandler v. Cook, 438 Pa. 447, 265 A.2d 794 (1970).[9] There has, however, been no case in the state specifically applying the requirement to claims of legal malpractice.
 
 
 21
 We have little difficulty in applying the rule to cases of legal malpractice where a jury sits as fact finder. The determination of legal malpractice, like determinations of malpractice in other professions, requires an evaluation of professional skill and judgment, as well as a standard of care which is related to common professional practice. The expert witness in professional malpractice is necessary to establish the specific standard of care and to assist the jury in its determination of defendant's conformity to the relevant standard. See National Cash Register v. Haak, 233 Pa.Super. 562, 335 A.2d 407 (1975). See generally Reardon v. Meehan, 424 Pa. 460, 227 A.2d 667 (1967). These are matters which are typically beyond the scope of the normal experience of laymen. Because in this respect, legal malpractice is no different from malpractice in any other profession, the Chandler-Smith requirement should apply.[10]
 
 
 22
 This case, however, presents a somewhat more difficult problem in that a judge, not a jury, served as fact finder. Arguably, because the judge may be familiar with the relevant standard of conduct and is more likely to be competent to evaluate defendant's conduct in light of that standard, the trial judge should be permitted to proceed without the assistance of expert testimony if he believes he is competent to do so. See Bonhiver v. Rotenberg, Schwartzman and Richards, 461 F.2d 925, 928-29 (7th Cir. 1972) (applying Illinois law); Watkins v. Shepard, 278 So.2d 890, 892 (La.Ct.App.1973). We conclude, however, that the better approach is to apply the same requirement to both bench and jury trials. First, although the judge may be competent to evaluate defendant's conduct in light of the relevant standard of care, the actual standard of care itself is a question of fact that is best left to the presentation of evidence with the opportunity for cross-examination and rebuttal. Cf. Bonhiver v. Rotenberg, Schwartzman and Richards, 461 F.2d 925, 928-29 (following Illinois Supreme Court statement that a determination based upon private knowledge of the court constitutes a denial of due process);[11] Appeal of Ritter, 147 Pa.Super. 236, 24 A.2d 470 (1942) (judge in assessment case may not base decision on personal knowledge). Second, we do not believe that a practicable standard exists which takes into account the trial judge's knowledge. Such a subjective standard, which would allow the trial judge to use his own knowledge if he were familiar with the appropriate standard of conduct, would effectively change a question of factfinding into one of discretion and require appellate courts to undertake the unwanted task of evaluating the trial judge's personal knowledge.[12] Finally, in the interest of uniformity, we prefer not to unnecessarily establish a different substantive requirement for bench trials than for jury trials. Accordingly, we conclude that the trial judge was correct in holding that expert testimony is required in bench trials of legal malpractice claims except where the matter under investigation is so simple, and the lack of skill so obvious, as to be within the range of the ordinary experience and comprehension of even non-professional persons.
 
 
 23
 Appellants do not contend that the district court erred in holding, on the basis of the evidence actually before it, that the matters involved were neither so simple, nor the lack of skill so obvious, as to be within the range of the ordinary experience of laymen. The initial advice to continue the 100% Payouts involved the consideration of numerous factors, including the contractual obligations of the employers, and an evaluation of the chances that the IRS would approve the proposed amendment to the Plan. This in turn required close analysis of the tax code, regulations and revenue rulings. The subsequent failure to submit the amended plan involved a similar assessment of the IRS's policies and of the code and regulations. Furthermore, there was evidence that Muller felt it necessary to await receipt of certain material from Fringe.[13]
 
 
 24
 Instead, appellants argue that the district court erred in granting the motion for involuntary dismissal prior to the close of its case. It was conceded at trial, however, that the only evidence which had not yet been received was the Local 463 plan. Appellants stated that they did not intend to, offer expert testimony. Moreover, they were informed by the distinct court that this failure would be fatal to their case.
 
 
 25
 Appellants intended to show that the Local 463 plan contained a 100% Payout clause which, in 1975, after Muller had ceased his representation of the Local 158 plan, was ruled invalid by the IRS. They argue that from this it can be inferred that the Local 158 plan amendment also would have been rejected and, furthermore, that this inference would prove that Muller's failure to foresee rejection of the Plan was so plainly inept that the Smith exception to the general rule regarding expert testimony could be invoked.
 
 
 26
 Even assuming, without deciding, that the Local 463 plan was admissible evidence,[14] and that it can properly be inferred that the IRS would have treated the Local 158 plan in the same way, we believe that Appellant's argument fails. At most, Appellant would have been able to prove that Muller's advice to submit its amended plan to the IRS was incorrect. It is clear, however, that this is insufficient to constitute malpractice. See Mazer v. Security Insurance Group, 368 F.Supp. 418, 422 (E.D.Pa.1973), Aff'd mem. 507 F.2d 1338 (3d Cir. 1975) (an informed judgment, even if subsequently proven to be erroneous, is not negligence); Smith v. Yohe, 412 Pa. 94, 105, 194 A.2d 167, 173 (1963). Likewise, it cannot render Muller's error so clearly negligent as to obviate the need for an expert.
 
 
 27
 We therefore conclude that appellant was not prejudiced by the exclusion of the proffered evidence.[15] Accordingly the order of the district court will be affirmed.
 
 
 28
 ADAMS, Circuit Judge, concurring.
 
 
 29
 Although I concur in the majority opinion, I write separately to point out a difference that I have with the majority's analysis regarding the applicability of the requirement of expert testimony in legal malpractice actions a requirement that may well have practical effect in the future.
 
 
 30
 As the majority notes, no Pennsylvania court has yet applied the expert testimony requirement to claims of legal malpractice. In this case, the district judge followed the rule, applicable to Pennsylvania actions involving other professions, that expert testimony is required to establish the relevant standard of care and whether the defendant complied with that standard, except when the matter in question is within the range of the ordinary experience and comprehension of non-professionals. The issue before us, as I see it, is simply whether the district judge in this case erred in refusing to proceed without the assistance of expert testimony on this point. In the absence of any indications to the contrary in the Pennsylvania cases, I agree with the majority that he did not err. The majority, however, goes one step further: it suggests that in No circumstances may a trial judge dispense with the requirement of expert testimony in a legal malpractice case, even if he believes himself competent to decide the issue of liability without it. Inasmuch as this matter is not squarely before us, and inasmuch as Pennsylvania courts have not addressed it, I think it is unwise for us to do so, especially in the context of a diversity case.
 
 
 
 [1]
 The case was tried by the district judge, not a jury. Therefore, the motion should have been labelled a Rule 41(b) motion for an involuntary dismissal. Fed.R.Civ.P. 41. A Rule 50(a) motion was inappropriate. Plaintiff was not prejudiced by this error, however, since satisfaction of the Rule 50(a) standard would imply satisfaction of the Rule 41(b) standard. See Martin v. E. I. duPont de Nemours & Co., Inc., 281 F.2d 801, 802 n. 1 (3d Cir. 1960); 9 C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2530 (1971)
 Rule 41(b) states in relevant part "(a)fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Fed.R.Civ.P. 41(b).
 
 
 [2]
 There were also a number of other individual defendants named by the plaintiff and third party defendants impleaded by Fringe. The claims against all of these defendants were dismissed and no appeal was taken
 
 
 [3]
 Just prior to trial, during consideration of a motion to dismiss for want of subject matter jurisdiction, the following colloquy took place:
 Plaintiff: "I have to adopt that . . . Mark Muller was acting as an attorney (not a fiduciary as required by ERISA).
 The Court: "What jurisdiction does this court have to deal with that matter."
 Plaintiff: "The court has pendent jurisdiction over Fringe Employees Plan and Fringe Programs, Inc." (Sic)
 The Court: There is no problem with that.
 The defendant then argued against both pendent and pendent party jurisdiction. After a five minute recess, the court simply stated that the defendants' motion to dismiss had been denied.
 
 
 [4]
 In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court stated that "(c)ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726, 86 S.Ct. at 1139. This sentence appeared, however, in the context of a discussion of discretionary nature of pendent jurisdiction. Moreover, in Rosado, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969), the Court upheld an exercise of pendent jurisdiction despite the pretrial dismissal of the underlying claim and in so doing confirmed that an early dismissal of a federal claim would not deprive a court of constitutional power to hear a pendent claim
 
 
 [5]
 See note 3, Supra
 
 
 [6]
 We do not now decide whether the result would be the same if the district court, expressly or impliedly, states that it would not have accepted pendent jurisdiction
 
 
 [7]
 It should be noted, however, that in a situation such as this, where the validity of the federal claim depends on the allegation of certain facts, which are never supported beyond the face of the pleadings, there is a significant possibility of abuse. In such cases, the district court should be particularly reluctant to exercise pendent jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)
 
 
 [8]
 Appellant contends that the district court adopted a rule that expert testimony is required in all cases. This is belied by the district court's memorandum opinion which cites Smith, explains the exception and finds that in this case the exception does not apply
 
 
 [9]
 We have been unable to find a case of professional malpractice in which the Chandler-Smith requirement was not applied
 
 
 [10]
 Numerous states have extended the requirement of expert testimony to legal malpractice cases. See, e. g. Dorf v. Relles, 355 F.2d 488 (7th Cir. 1966) (Illinois law); Wright v. Williams, 47 Cal.App.3d 802, 121 Cal.Rptr. 194 (1975); Baker v. Beal, 225 N.W.2d 106 (Iowa 1975); Hill v. Okay Constr. Co., 312 Minn. 324, 252 N.W.2d 107 (1977); Walters v. Hastings, 84 N.M. 101, 500 P.2d 186 (1972)
 
 
 [11]
 We need not decide whether permitting the judge to use his own knowledge to set the standard of care would violate due process. We merely conclude that in the absence of a clear statement by the Pennsylvania courts authorizing such a practice, the requirement of expert testimony is the better rule
 
 
 [12]
 Furthermore, any objective standard which required an expert except where an "ordinary judge" would know the applicable standard not only would require the creation of an entirely new body of law, but would also require reviewing courts to determine whether the trial judge possessed the knowledge of some theoretical ordinary judge, a creature far more difficult to define than an ordinary person
 
 
 [13]
 Even were the state to adopt a standard different for the requirement of expert testimony in bench trials for legal malpractice, this case, where a specialized field of law was involved, and where plaintiff argued to the trial judge that defendant held himself out as an expert, would probably be within the requirement of expert testimony. See Wright v. Williams, 47 Cal.App.3d 802, 121 Cal.Rptr. 194 (1975)
 
 
 [14]
 Examination of the colloquy between the district judge and plaintiff's counsel, reveals that the court may have ruled the plan inadmissible on the grounds that without expert foundation to interpret the relationship between the two plans, the Local 463 plan was not probative as to the negligence of the judgment exercised by Muller in not amending the plan. See Fed.R.Evid. 401, 403. Such decisions are to be overturned only upon a finding that the trial court abused its discretion. See United States v. Hearst, 563 F.2d 1331, 1348-49 (9th Cir. 1977); United States v. Johnson, 558 F.2d 744, 746, Cert. denied, 434 U.S. 1065, 98 S.Ct. 1241, 55 L.Ed.2d 766 (1978) (5th Cir. 1977). It would then follow that the dismissal occurred at the actual close of plaintiffs' evidence
 
 
 [15]
 As a general rule, however, we note that the interests of justice will be better served if involuntary dismissals for failure to show right to relief are not ordered until the close of plaintiffs' case. This is strongly suggested by the rule itself, which explicitly states that such dismissals may be granted "after the plaintiff has completed the presentation of his case." Unless it is manifestly clear that plaintiff will not prove his case, he should be given the opportunity to do so