Gerhard BASS, Appellant,

v.

Sylvester ATTARDI, individually and as a member of the South Amboy Planning Board; H. Thomas Carr, individually and as a consultant to the South Amboy Planning Board; Alice Christina, individually and as a chairperson of the South Amboy Planning Board; Mayor J. Thomas Cross, individually and as Mayor of the City of South Amboy and as a member of the South Amboy Planning Board; Gregory F. Kusic, individually and as attorney for the South Amboy Planning Board; Robert Levins, individually and as a member of the South Amboy Planning Board; Andrew Markovich, individually and as a member of the South Amboy Planning Board; Michael Marrone, individually and as a member of the South Amboy Planning Board; Councilman Thomas O'Brien, individually and as a member of the South Amboy Planning Board; Edward O'Leary, as Chief of Police of South Amboy; Madeline Purcell, individually and as a member of the South Amboy Planning Board; Wilbur Schmidt, individually and as a member of the South Amboy Planning Board; and Frederick H. Kurtz, individually and as a Director of the Department of Engineering of the City of South Amboy and as Code Enforcement Officer of the City of South Amboy.

No. 88–5511.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Dec. 15, 1988.

Decided Feb. 14, 1989.

Susan E. Champion, Hunziker, Merrey & Jones, P.A., Paterson, N.J., for appellant.

James B. Smith, Metuchen, N.J., for Gregory Kusic and Frederick Kurtz.

John R. Lanza, Thatcher & Lanza, Flemington, N.J., for Alice Christina, Robert Levins, Andrew Markovich, Michael Marrone and Madeline Purcell.

James B. Convery, Convery, Convery & Shihar, Metuchen, N.J., for Sylvester Attardi, J. Thomas Cross and Thomas O'Brien.

Before: GIBBONS, Chief Judge, HUTCHINSON and HUNTER *, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

1. Once again, we return to the much-litigated struggle between plaintiff-appellant Gerhard Bass ("Bass") and various defendant-appellee officials of the city of South Amboy, New Jersey, over the establishment of a methadone-maintenance treatment center in South Amboy. Bass contends that members of the South Amboy Planning Board ("Planning Board"),[1] their agents,[2] and the South Amboy Code Enforcement Officer [3] violated his rights to equal protection and freedom of speech by thwarting his efforts to establish a methadone-maintenance treatment center at 124 Broadway, South Amboy.[4]

2. In this appeal, Bass asks us to vacate an order finding defendant-appellee members of the South Amboy Planning Board and their agents absolutely immune from Bass' action brought pursuant to 42 U.S.C. § 1983 (1982) and to vacate an order granting South Amboy Code Enforcement Officer Frederick Kurtz ("Kurtz") qualified immunity. As a procedural matter, Bass contends that the district court erroneously entered judgment for the defendants prior to the completion of his case, thus impinging on his right to due process. As a substantive matter, Bass contends that none of the defendants are entitled to any immunity. While we hesitate to affirm a judgment entered prior to the completion of a plaintiff's case, with regard to the Planning Board members and their agents in their individual capacities we will do so because they are absolutely immune as a matter of law. On the other hand, we will vacate the order to the extent it dismisses the complaint against the members of the Planning Board and their agents in their official capacity because the Planning Board itself has no immunity. We will also vacate the order in favor of Kurtz in light

---

* Judge Hunter participated in the consideration of this appeal but died before the entry of judgment. See 28 U.S.C. § 46(c) (1982).

1. When this claim arose, defendant-appellee Alice Christina chaired the Planning Board. Defendant-appellee J. Thomas Cross was mayor of South Amboy and a member of the Planning Board. Defendant-appellee Thomas O'Brien was a member of the South Amboy City Council and the Planning Board. Defendants-appellees Sylvester Attardi, Robert Levins, Andrew Markovich, Michael Marrone, Madeline Purcell, and Wilbur Schmidt were all members of the Planning Board. When appropriate, we will refer to all these defendants-appellees collectively as "the members of the Planning Board." The Planning Board itself is not a defendant in this action.

2. When this claim arose, defendant-appellee Gregory F. Kusic was the legal counsel for the Planning Board and defendant-appellee H. Thomas Carr was a consultant to the Planning Board.

3. When this claim arose, defendant-appellee Frederick H. Kurtz ("Kurtz") was the Code Enforcement Officer of the city of South Amboy.

4. The parties agreed to the dismissal of the complaint against defendant Edward O'Leary, Chief of Police of South Amboy.

of the incomplete record to allow Bass to complete the presentation of his case and to allow both parties to complete the record.

## I.

3. Bass began his efforts to secure permits necessary to establish a methadone-maintenance treatment center in South Amboy in May 1981. In November 1981, Bass sought a use variance for 124 Broadway from the South Amboy Board of Adjustment. The site in question was located in a B–1 zone for which business and professional offices were permitted uses under the South Amboy Zoning Code. The Board of Adjustment denied Bass' request on March 10, 1982. The Board of Adjustment relied on Amendment 1066 of the South Amboy Zoning Code adopted on July 16, 1981, which regulated the location of treatment facilities.

4. Bass appealed the decision of the Board of Adjustment to the New Jersey Superior Court. On June 17, 1983, Judge Stroumtsos of the Law Division ruled from the bench that Bass' proposed facility fell within the definition of a professional office and hence was a permitted use in the B–1 general business zone in which 124 Broadway is located. Judge Stroumtsos also held that Amendment 1066 was not applicable to Bass' project. Judge Stroumtsos did not, however, direct Kurtz to issue a certificate of occupancy. Instead, he held that the proposed methadone-maintenance treatment center must meet the same requirements any other business would have to meet in order to operate in a B–1 zone. On June 24, 1983, Judge Stroumtsos entered an order reflecting his decision from the bench.

5. On June 21, 1983, Bass applied to Code Enforcement Officer Kurtz for a certificate of occupancy. Near the end of June 1983, Bass advised Kurtz that he had secured parking for five cars within ½ block of 124 Broadway. As evidence, Bass submitted a copy of a money order evincing payment, although he did not include a copy of his lease.

6. On June 29, 1983, Kurtz refused Bass' request for a certificate of occupancy because he did not have a copy of Judge Stroumtsos' opinion and because Bass had not secured site plan approval. On July 14, 1983, Kurtz told Bass that sanitary, heating, and air conditioning facilities were "presently inadequate." On August 8, 1983, Kurtz rejected Bass' parking plan and raised the issue of Bass' failure to comply with New Jersey's Barrier Free Design Regulations. During the period May 1981 to March 1983, however, Kurtz issued three other certificates of occupancy to businesses in the immediate vicinity of 124 Broadway in the B–1 zone.

7. On August 15, 1983, Bass filed an application with the Planning Board requesting site plan approval and a parking variance. The Planning Board did not reach Bass' application at its September 1983 meeting. The Planning Board took up Bass' application at its October meeting where it claimed that it was not bound by Bass' suit against the Board of Adjustment. Bass, accordingly, initiated yet another suit in the New Jersey Superior Court. The same judge who had ruled against the Board of Adjustment held on November 16, 1983, that the Planning Board was bound by his prior ruling in the Board of Adjustment case. The Planning Board appealed. Notwithstanding the Superior Court's decision, however, the Planning Board voted to table Bass' application at its November 21, 1983 meeting.

8. On December 1, 1983, Bass filed this section 1983 suit in the District of New Jersey. His principal complaint was that the defendants were selectively enforcing municipal parking regulations, thus preventing him from securing a certificate of occupancy for the methadone-maintenance treatment center. Bass sought a preliminary injunction ordering the defendants to issue him a certificate of occupancy, as well as damages.

9. On February 16, 1984, the district court denied Bass' claim for immediate relief. Bass appealed to this court. On November 13, 1984, for reasons having no bearing on this appeal, we reversed and

remanded in *Bass v. Attardi,* 751 F.2d 375 (3d Cir.1984) (mem. op.) [hereinafter Bass I].

10. Meanwhile, on January 25, 1984, February 20, 1984, and March 14, 1984, the Planning Board finally considered Bass' application of August 1983. On March 14, 1984, the Planning Board denied the application. Bass appealed that decision to the City Council which upheld the Planning Board on July 9, 1984. Bass then appealed to the New Jersey Superior Court, which dismissed his complaint on April 9, 1987.

11. In federal court, Bass' claim for damages proceeded toward trial from the time of our remand in *Bass I* to July 30, 1987.[5] The docket sheet states that on July 30, 1987, "TRIAL WITHOUT JURY MOVED BEFORE THE [district court] IN PHILA., PA. Minutes of non-jury trial of 7–30–87 ... filed." Docket Entry # 50. The transcript of that proceeding does not indicate whether Bass had completed the presentation of his case-in-chief by the end of the day.[6]

12. Sometime on or before August 4, 1987, the defendants moved to dismiss the suit on the grounds of qualified and/or absolute immunity, standing, and the absence of a case or controversy. The defendants also asked the district court to abstain from hearing the case in light of pending litigation in the New Jersey state courts.[7]

13. On January 22, 1988, the district court entered judgment for Planning Board members and their agents. According to the district court, the Planning Board was a quasijudicial body; as such, its members and agents were absolutely immune from suit. The district court explicitly grounded its order on its power under Fed.R.Civ.P. 41(b) (involuntary dismissal). The district court refused, however, to extend qualified immunity to Code Enforcement Officer Kurtz and scheduled the trial to reconvene on February 26, 1988.

14. The trial never reconvened. On May 26, 1988, the district court entered judgment for defendant Kurtz on the ground that he was entitled to qualified immunity.

15. On June 24, 1988, Bass timely filed this appeal. We have jurisdiction to review this final order pursuant to 28 U.S.C. § 1292.

## II.

16. Our review of the selection, interpretation, and application of legal precepts is plenary. *See Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986).

## III.

17. As an initial matter we must address Bass' procedural objection. Bass claims that the district court entered judgment for the defendants without permitting him to complete presentation of his case. The district court grounded its decision granting absolute immunity for the members of the Planning Board and their

---

5. Prior to trial, Bass abandoned his injunctive claim.

6. For example, the Pre–Trial Stipulation and Order indicates that Bass intended to call Kurtz as a witness. Docket Entry # 44 at 10. Kurtz did not testify on July 30, 1987, however. Docket Entry # 50 (Minutes of Proceeding). Trial counsel for Christina concluded the July 30, 1987 proceeding by stating: "I would like an opportunity to confer with the judge if he could give us some time now regarding scheduling for next week." Docket Entry # 52 at 39 (transcript of proceeding).

7. Unfortunately, we cannot find the actual motion to dismiss from any of the defendants in the district court record. On the other hand, Bass acknowledges that such a motion was made. We presume, therefore, that the motion relied on the grounds indicated in the notice of motion in limine filed by counsel for defendants-appellees Christina, Levins, Markovich, Marrone, and Purcell. Docket Entry # 48. Counsel for those defendants certified that he delivered a copy of his notice to the chambers of the judge sitting by designation in New Jersey, but trying the case in Philadelphia, on July 30, 1987, the first day of trial. The time stamp on the notice and the docket sheet, on the other hand, indicate that the notice was filed with the clerk in the District of New Jersey on August 4, 1987. Docket Entry # 48 at 3. We suspect, but need not resolve, that this five-day discrepancy arises from the fact that the judge hearing the case sits in Philadelphia, and the clerk for the district court is in Trenton, New Jersey.

agents and involuntarily dismissing Bass' complaint on Fed.R.Civ.P. 41(b).

18. The second sentence of that rule states:

> *After the plaintiff,* in an action tried by the court without a jury, *has completed the presentation of evidence,* the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

Fed.R.Civ.P. 41(b) (emphasis added). The plain language of this sentence states that a motion to dismiss the case with prejudice is not ripe for disposition until the plaintiff has had an opportunity to present evidence.[8] Cognizant of the district court's inherent authority to dispose of its own caseload in a prompt and efficient manner, we have allowed a district court to terminate an action under Rule 41(b) when the plaintiff acknowledged that it would be presenting no evidence of a nature absolutely essential to its case. *See Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 482 (3d Cir.1979). Thus in *Lentino,* the plaintiff was given an opportunity to present evidence; his case was properly terminated, because he failed to avail himself of the opportunity. *Id.* at 482.[9] Our interpretation of Rule 41(b) in *Lentino* is consistent with the Supreme Court's more recent statement in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that a district court can sua sponte enter summary judgment. Key to *Celotex* is the requirement that the district court put the losing party on notice to bring forth evidence. *Id.* at 326, 106 S.Ct. at 2554.

19. In this case, Bass complains that he was not afforded the opportunity available in *Lentino* because the district court terminated the case against the Planning Board members and their agents without informing Bass of its intention to do so. For the purpose of this discussion, we will accept Bass' assertion as true. Nonetheless, we can review the district court's decision because the question of whether the members of the Planning Board and their agents in their individual capacities acting within the scope of their authority are entitled to absolute immunity is a quintessentially legal question.[10] In contrast to *Lentino,* where the plaintiff was afforded the opportunity to present evidence and none was forthcoming, in this case, there is no evidence Bass can present that will disturb our resolution of this legal question.

## IV.

20. We turn then to the substantive question—are the members of the Planning Board and their agents acting within the scope of their authority in their individual and official capacities entitled to absolute immunity? To answer this question, we must look to the governmental function performed by the defendants. *See Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405 n. 30, 99 S.Ct. 1171, 1179 n. 30, 59 L.Ed.2d 401 (1979).

21. In *Jodeco, Inc. v. Hann,* 674 F.Supp. 488 (D.N.J., 1987), Judge Brotman painstakingly addressed this very issue as

---

**8.** Of course, there is a difference between affording a party the opportunity to "present" evidence under Fed.R.Civ.P. 41(b) and "admitting" the evidence pursuant to the Federal Rules of Evidence.

**9.** We explicitly admonished the district court, however:

> As a general rule, ... we note that the interest of justice will be better served if involuntary dismissals for failure to show right to relief are not ordered until the close of plaintiffs' case.

*Lentino,* 611 F.2d at 482 n. 15. That admonition is no less true today.

**10.** Contrary to Bass' assertions, the fact that the members of the Planning Board may have tarried with Bass' application does not put their actions outside the scope of their authority. The Planning Board had 45 days to act upon Bass' application or else run the risk of having Bass' application deemed automatically approved, unless the Planning Board could subsequently show that Bass' application was incomplete. *See* N.J. Stat.Ann. § 40:55D–50(b) (West Supp.1988).

it relates to the members of the Planning Board acting within the scope of their authority. Although the existence of an absolute immunity to a section 1983 action is a question of federal, not state law, Judge Brotman turned to the statutorily-defined powers of planning boards in New Jersey and the decisions of the New Jersey courts in ascertaining the governmental functions performed by members of planning boards in New Jersey. Judge Brotman concluded that "the duties of planning ... board members in the state of New Jersey are so integrally related to the judicial process as to warrant shielding from liability those individuals acting in performance of them." *Id.* at 496.

22. We need not retravel the path followed by Judge Brotman to simply say we agree.[11] We therefore conclude that members of municipal planning boards in New Jersey are absolutely immune in their individual capacities from damage actions brought pursuant to 42 U.S.C. § 1983 alleging equal protection and first amendment violations arising out of site plan review conducted pursuant to N.J.Stat.Ann. § 40:55D–25(a)(2) (West Supp.1988). Consequently, we will affirm the district court's order to the extent it relates to the members of the Planning Board in their individual capacities.[12]

23. We must also consider whether the absolute immunity of the members of the Planning Board extends to their agents acting in their individual capacities. By New Jersey statute, a planning board is empowered to employ counsel and experts "as it may deem necessary." N.J.Stat.Ann § 40:55D–24 (West Supp.1988). In *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983), we held that absolute immunity accorded to the members of a municipal council extended to their attorney "because the borough attorney was acting in direct assistance of [the activity] entitled to absolute immuni-

---

11. In *Anastasio v. Planning Board,* 209 N.J.Super. 499, 507 A.2d 1194, *certification denied,* 107 N.J. 46, 526 A.2d 136 (1986), Judge Greenberg, now of this court, noted an additional important public policy argument supporting our conclusion and that of Judge Brotman:

> We think that the public interest requires that persons serving on planning boards considering applications for development act with independence and without fear that developers, who will frequently have significant financial resources and the ability to litigate, not bring them into court. The possibility of facing expensive and aggravating litigation as a result of making a decision on an application for development may in a subtle way impact on the decision making process.

*Id.* at 526, 507 A.2d at 1208.

12. To forestall any confusion regarding the members of the Planning Board, we use this note to tie up two loose ends. First, defendant Cross was formally sued in his dual capacities as mayor of South Amboy and as a member of the Planning Board. In *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983), we noted that a mayor can act in a nonexecutive capacity, thus entitling him to absolute immunity. *Id.* at 99. This litigation has proceeded solely on the theory that Cross' liability arises from his role as a member of the Planning Board. We therefore find it unnecessary to remand this case for consideration of whether Cross is only entitled to qualified immunity.

Second, counsel for defendants Kusic and Kurtz ("Counsel") purports to continue to repre-

sent defendant Carr in this appeal. Carr, as well as defendant Schmidt, evidently died during the pendency of this litigation, more than three months prior to the district court's entry of the final order. Counsel filed separate purported suggestions of death for Carr and Schmidt upon which the district court failed to act. In his submission to us, Counsel contends that the district court erred in failing to dismiss the complaint against Carr because Carr died and Bass failed to substitute Carr's representative or successor.

Counsel's argument is flawed. First, Counsel's attorney-client relationship with Carr ceased at Carr's death. *See United States v. Dwyer,* 855 F.2d 144, 145 (3d Cir.1988) (per curiam) (relying on agency principles); *Cheramie v. Orgeron,* 434 F.2d 721, 724–25 (5th Cir. 1970) (authority of defense counsel for group of defendants terminated as to one defendant upon death of that defendant to avoid conflicts of interest). Counsel thus lacks standing to act on behalf of Carr in this appeal. Second, the suggestion of death in the cases of both Carr and Schmidt was deficient because the suggestion was not served on the decedents' successors or representatives as required by Fed.R.Civ.P. 25(a)(1). *See Rende v. Kay,* 415 F.2d 983, 986 (D.C.Cir.1969) (expressing concern that decedent's "counsel" would, as a tactical matter, file a suggestion of death and thus unfairly shift the burden to the plaintiffs to locate the decedent's successor or representative in 90 days). Consequently, we do not list Counsel as "representing" Carr in the caption of this opinion, although we will affirm the judgments in favor of both Carr and Schmidt in their individual capacities.

ty." *Id.* at 99–100. The rule in *Aitchison* is equally applicable to this case where Kusic, the Planning Board's legal counsel, and Carr, the Planning Board's consultant, were acting in their dealings with Bass on behalf of the members of the Planning Board. Accordingly, we will also affirm the order finding Kusic and Carr entitled to absolute immunity in their individual capacities as agents of the members of the Planning Board.

■ 24. We cannot, however, affirm the district court's order dismissing the suit against the members of the Planning Board and their agents in their official capacity. The Supreme Court has stated:

> Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (citations omitted). Thus in this case, the suit naming the members of the Planning Board in their official capacities in effect makes the Planning Board a defendant. The Planning Board as a governmental entity has no immunity whatsoever. *See Owen v. City of Independence,* 445 U.S. 622, 657, 100 S.Ct. 1398, 1418 (1980) (no immunity for municipality); *Aitchison,* 708 F.2d at 100 (absolute immunity of individual defendants does not preclude liability of municipality); *Jodeco,* 674 F.Supp. at 499 (planning board in New Jersey has no immunity). Consequently, we will vacate the order dismissing the suit against the members of the Planning Board and their agents in their official capacities.

## V.

■ 25. We turn next to the procedural context in which the district court ruled that Kurtz, the Code Enforcement Officer, is entitled to qualified immunity. Bass contends again that he was not given warning by the trial judge that he intended to enter summary judgment in favor of Kurtz. The district court's opinion relies heavily on a purported deposition given by Kurtz.[13] According to the district court:

> While we find some element of purposefulness in Kurtz's application of the parking ordinance to Bass' methadone clinic we also find that Kurtz had other nondiscriminatory bases for denying a certificate of occupancy.

Memorandum Opinion of May 19, 1988.

26. In contrast to the purely legal question of absolute immunity, Kurtz' entitlement to qualified immunity has a quasifactual component. "[W]hether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)). We have held that for a right to be "clearly established," there must be "some, but not precise, factual correspondence" between the case at hand and prior decisions. *See People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d Cir.1984).

27. Our ability to review the district court's analysis of this "factual correspondence" is limited to the district record as we find it. "It is, of course, black letter law that a United States court of appeals may not consider material or purported evidence which was not brought upon the record in the trial court." *United States ex rel. Bradshaw v. Alldredge,* 432 F.2d 1248, 1250 (3d Cir.1970).

28. In this case, the district court record is *totally* devoid of any papers other than the decision explaining why it believed that Kurtz was entitled to qualified immunity. Consequently, we cannot determine wheth-

---

**13.** A transcript of that deposition was included in Bass' appendix but does not appear in the district court record.

er Kurtz was entitled to qualified immunity. The fact that this evidence may exist, but the parties failed to file it with the clerk, does not help us now.

29. The sparsity of the record also makes it impossible for us to determine whether Bass was afforded the opportunity to present his case to the extent required by *Lentino*.[14] That shortcoming, in tandem with the questions posed by the claim of qualified immunity, suggests that we stay our hand.[15] We therefore decline to address whether the district court properly afforded Kurtz qualified immunity and remand the case against Kurtz to the district court.[16]

### VI.

30. For the foregoing reasons, we will affirm the district court's order of January 21, 1988 to the extent that the district court dismissed the complaint against the members of the Planning Board and their agents in their individual capacities based on their absolute immunity. We will vacate that order, however, to the extent that the district court dismissed the complaint against the members of the Planning Board and their agents in their official capacities. In addition, we will vacate the order of May 19, 1988, in which the district court dismissed the complaint against Code Enforcement Officer Kurtz and remand the case against him to the district court for further proceedings consistent with this opinion.

**14.** For that same reason, we decline to consider the arguments summarily advanced by Kurtz in defense of the judgment in his favor. For example, Kurtz claims that Bass is barred by res judicata; we cannot, however, determine whether Kurtz was even named as a defendant in the state court suit Kurtz refers to in his submission to this court. *See Charlie Brown of Chatham, Inc. v. Board of Adjustment,* 202 N.J.Super. 312, 327, 495 A.2d 119, 127 (A.D.1985) (identity of parties is element of res judicata).

**15.** Because both these issues concern us, we decline to exercise our authority under Fed.R. App. P. 10(e) to correct the record.

**16.** Nothing in our decision today precludes Kurtz from immediately completing the record and moving for summary judgment on remand, if appropriate. Bass then will have notice and an opportunity to respond. Bass' opportunity to respond does not require oral argument, unless the district court requests it. *See* Fed.R.Civ.P. 78.