## Saltzer, Appellant, v. Reckord.

Argued May 28, 1935. Before SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*M. R. Metzger,* of *Metzger & Wickersham,* for appellant.

*Arthur H. Hull,* of *Snyder, Hull, Hull & Leiby,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 29, 1935:

Plaintiff brought this action to recover damages from defendant, a physician, for injuries received when an appliance in the doctor's office called a sterilizer, filled with boiling water, was upset, scalding him severely. After a verdict in plaintiff's favor for $5,000, the court entered judgment for defendant. Plaintiff appeals.

Appellant, who had been sick with the grippe for two or three weeks, went to defendant's office by appointment for the purpose of having a general physical examination. The doctor's quarters consisted of several rooms. For the first part of the examination plaintiff was taken by a nurse to one of the side rooms, where she took samples of blood by pricking with a needle plaintiff's finger and his arm near the elbow. Before taking the latter specimen the nurse told him to look away so that he would not see the blood. Plaintiff did so, but after the operation was completed informed the nurse that he did not feel well, whereupon she escorted him to a chair in the

doctor's consultation room, and told defendant that the plaintiff had said he was not feeling very well. Plaintiff remarked to the doctor that he believed he was going to faint. Defendant then gave him some aromatic spirits of ammonia and took him into a smaller room about ten feet square, where he seated him on a stool twenty inches high about the middle of the room, and facing in the general direction of a table three or four feet away on which was the sterilizer. Defendant instructed plaintiff to hang his head down, and assisted him in doing so by pushing it down further. Plaintiff testified, "That is the last I heard or saw of Dr. Reckord until I came to, lying on the floor with my face down." Plaintiff evidently lost consciousness, fell forward from the stool, struck the table which supported the sterilizer, causing the table to tilt and the sterilizer to fall to the floor, where the boiling water came in contact with his right arm and body and caused the injuries which gave rise to this suit. Plaintiff in his testimony infers that the doctor left the room before he fell, but does not say so positively. We think the clear indications are that defendant did not leave the room, that the plaintiff became unconscious as he put his head down and did not know what defendant did. When consciousness returned, the defendant was at plaintiff's side. The plaintiff also infers that he fainted; the doctor says positively that he did not, that he had a convulsion, and that the upsetting of the sterilizer was due to the convulsive movements of plaintiff's arms, in which they struck the legs of the table on which it stood. Plaintiff testified that from ten to fifteen minutes elapsed between the time the nurse took the samples of blood from his arm until the accident. Testimony on behalf of defendant shows that the elapsed time between taking the blood and the accident was very much longer, as much as half an hour.

Plaintiff's position, as set forth in his brief, is defendant was negligent in that, knowing him to be in a fainting condition, he placed him on a stool without a

back, three or four feet from a receptacle containing boiling water, which could be upset very easily, the defendant knowing about the presence of the water and plaintiff being ignorant of that fact. Plaintiff's counsel argues that his client was a business invitee of defendant and that hence the case is governed by the rules applicable to that relation, rather than by those concerning the liability of a doctor for negligent treatment of a patient, which involve questions as to the proper exercise of professional skill and judgment. We are unable to see the case in that way. If plaintiff's injury was the result of some defect in the premises, or of some negligent arrangement of the appliances therein, there might be merit in counsel's argument. We do not understand plaintiff to contend that it was negligent for the doctor to have a sterilizer in his office; such a position would be untenable. Under present-day conditions sterilizers are a necessary part of the equipment of a doctor's office; they enable him to avoid the danger of transmitting infection by the instruments and appliances which he must use in caring for those who come to him for treatment. And, if the sterilizer is a proper part of his equipment, certainly it is not negligence for a doctor to place it on a table against the wall of his office. The cases cited by plaintiff, such as Robb v. Niles-Bement Pond Co., 269 Pa. 298; Woodruff v. Painter & Eldridge, 150 Pa. 91, and Sinn v. Farmers Deposit Savings Bank, 300 Pa. 85, do not apply to the situation before us, and there clearly would be no liability if they did. Here the accident took place while the doctor was actually treating the patient, and as a result of the method which he employed in doing so. The inquiry is not whether something was wrong with the premises, but whether something was wrong with the doctor's treatment of his patient.

Plaintiff called no doctor to testify that it was not proper treatment under the circumstances to seat him on a stool and instruct him to put his head down, whereas a number of very competent physicians testified that this

was a proper thing to do. They further said that they had never known of a person's fainting from taking blood samples so long after they were taken, that fainting from such cause occurs immediately. They gave it as their opinion that there was not sufficient in the symptoms evidenced by plaintiff, or in his mere statement that he believed he was going to faint to lead the defendant to the conclusion that it was improper to seat him on the stool or that he would fall from it. Their conclusion from hearing the entire testimony was that plaintiff had not fainted but that he had had a convulsion. In the absence of proof that what the doctor did—that the care and treatment which he employed—was not according to such reasonable care, skill and diligence as is ordinarily exercised in his profession, there could be no recovery.

The boiling water was but incidental to the entire happening. Its only effect was probably to cause more serious injuries than would have occurred if some other injuring object had existed. If plaintiff had fallen from the stool and injured himself by contact with some other object in the doctor's office, or had he struck the floor or the table or wall or anything else and wounded himself, the legal situation would be the same. No witness was called to testify that the measure of care under the circumstances was not all that should have been exercised. Should the doctor have anticipated that the plaintiff would fall? The testimony of the other doctors is that he should not. No witness says that he should, and there is nothing on the record indicating that he should except the fact that the plaintiff did fall. The plaintiff's fall in itself could not speak negligence. As under the situation which existed the doctor had no reason to anticipate the fall, he cannot be adjudged guilty of an absence of care. In a line of cases, beginning with McCandless v. McWha, 22 Pa. 261, and of which Stemons v. Turner, 274 Pa. 228, is one of the latest examples, we have established the rule that a physician is only required to exercise such reasonable skill and diligence as is ordi-

narily exercised in his profession. This is the general rule: 21 R. C. L. 381. This principle was correctly applied by the learned trial judge in entering judgment for defendant.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot agree with the opinion of the majority. In the first place, the verdict for plaintiff requires that the evidence be viewed in the light most favorable to him. The majority's substantial reliance upon the testimony produced by defendant is therefore wholly unwarranted. Plaintiff placed himself in defendant's care during the examination, and he was entitled to be treated not only with such reasonable skill and diligence as is ordinarily exercised in the medical profession at the time and place but also with the reasonable care required of everyone. Plaintiff's testimony discloses that he told defendant of his feeling faint, and that thereupon defendant, after administering aromatic spirits of ammonia, placed him on a stool, without support, facing in the direction of and not more than three or four feet from a three-quart sterilizer filled with boiling water, and pushed his head down. It seems to me to be clear beyond any doubt that a jury could reasonably have found from this evidence that defendant should have foreseen the likelihood of plaintiff's falling from this stool, knocking down the sterilizer, and being injured by the boiling water. Whether plaintiff fainted or suffered a convulsion was for the jury to decide, particularly in view of the testimony in plaintiff's behalf that after the accident defendant said plaintiff had fainted. The evidence was plainly sufficient to support a finding that defendant failed to exercise the ordinary care which he should have used under the circumstances.

The principal ground on which the majority opinion appears to be rested, and on which the court below based its decision, is that plaintiff was required to show an absence of the reasonable skill and diligence ordinarily ex-

ercised in the medical profession, and that plaintiff's case must fail because he called no physician or other expert to testify that the treatment and care given plaintiff were not in accord with modern medical practice. But surely it was never intended that the rule as to the professional duty required of a physician should lower the standard of care to be imposed upon persons of that class or relieve them of the duty of ordinary care under which all others are placed. The negligence here alleged arises from no improper diagnosis or treatment or any other conduct involving the exercise of professional skill, but simply from defendant's failure to realize the danger of placing one in a fainting condition on a stool, without support, so close to a container full of boiling water. As was said in Laughlin v. Christensen, 1 Fed. (2d) 215, at page 217, "The reason for the rule, that in certain cases testimony of experts is indispensable to establish negligence, is that, in order to reach an intelligent conclusion on the question of negligence in those particular cases, a scientific exposition of the subject under consideration is obviously necessary; but when the reason for the rule ceases the rule itself ceases." Clearly, no scientific knowledge was necessary to determine defendant's negligence in the case at bar; and when such knowledge is not needed, the absence of expert testimony as to a defendant's negligence does not defeat the plaintiff's recovery, although the accident occurred in the course of professional treatment: Laughlin v. Christensen, supra; Vergeldt v. Hartzell, 1 Fed. (2d) 633; see Evans v. Roberts, 172 Ia. 653, 660; Toy v. Mackintosh, 222 Mass. 430; Benson v. Dean, 232 N. Y. 52; Wharton v. Warner, 75 Wash. 470, 475. In my opinion the evidence is undoubtedly adequate to warrant a finding of negligence in the light of the jurors' own knowledge and experience, without expert assistance.

In Hogan v. Clarksburg Hospital Co., 63 W. Va. 84, a case not unlike the one before us, the plaintiff, who was subject to epileptic fits, was taken to the defendant's hospital while suffering from a fit, and was left alone in a

room with an open gas fire. When later found, he was badly burned. It was held that plaintiff's evidence should have been submitted to the jury, the court pointing out that "That which is complained of in this case is not the wrong or unskillful application of remedies but the neglect to give that reasonable and ordinary care and attention which was needed and due to plaintiff after being received into the hospital at the hands of the employees of the defendant." If hospital attendants may be found negligent in leaving an epileptic patient unattended within reach of an open fire, it would seem that a physician who, although warned of his patient's fainting condition, places him on a stool, without support, as close to boiling water as was here done, might similarly be found guilty of a want of due care.

For these reasons I would reverse the judgment of the court below and enter judgment on the verdict.