## Bierstein, Appellant, v. Whitman.

Argued November 10, 1948; reargued November 16, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE, and JONES, JJ.

*Robert Grey Bushong*, with him *Mark E. Garber* and *William J. Krencewicz*, for appellant.

*Arthur H. Hull*, with him *E. M. Biddle, Jr.*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 3, 1949:

This is an action in trespass against a dentist to recover damages because of alleged negligent professional treatment. The court below entered a compulsory nonsuit which it refused to take off. This appeal followed.

Considering the testimony in the light most favorable to the plaintiff the facts are as follows: The defendant is a dentist who resides and practices his profession in the Borough of Camp Hill, Cumberland County, Pennsylvania. On January 24, 1942, the plaintiff went to defendant's office for a dental examination. The defendant determined that the upper and lower

right third molars were extending toward the cheek, producing an irritation. The teeth, in other respects, were sound. Pursuant to his recommendation, defendant extracted the tooth from the upper jaw and also the one from the lower jaw. Defendant encountered difficulty in the extraction of the tooth from the lower jaw. He was required to use some force. Plaintiff testified that when the extraction was completed defendant was breathing heavily and was nervous. When he showed her the tooth defendant dropped it on the floor. The tooth was large and had hooks at the ends of its roots. Immediately after the extraction, defendant packed the socket with the drug sulfanilamide. Defendant instructed plaintiff, on reaching home, to use an ice pack on the outside of her face and to wash out her mouth with a solution composed of a teaspoon of table salt, teaspoon of baking soda, fifteen drops of tincture of iodine mixed in a glass of warm water. On plaintiff's return to her home her jaw began to swell. She applied the ice pack and medical solution in accordance with defendant's instruction. The pain and swelling continued and increased. Plaintiff returned to defendant's office on January 27, 1942. Upon further examination the defendant advised her to continue rinsing the mouth, the application of ice packs, the use of sedatives and massage with camphorated oil. Plaintiff again returned to the defendant's office on January 29, 1942. The swelling was then more pronounced, the pain greater, and she had a temperature. She could scarcely open her mouth. Defendant called in Doctor Euftyn Jones, a physician and surgeon, who examined the outside of the plaintiff's jaw and told her to continue the treatment recommended by the defendant.

On January 31, 1942, upon the advice of Dr. Burgin, a physician, plaintiff entered the Harrisburg Hospital, where she remained a patient until February 9, 1942. Dr. J. J. Austra, a physician and surgeon, from Shenandoah, where plaintiff resided, made a social call upon

her at the hospital on February 1, 1942. He testified that her face, neck and the upper half of her chest were much swollen; she was unable to swallow or to take food and pus was oozing from her mouth; and that he saw her at her home on February 14, 1942. He said that she then had an incision on the outside of her neck, which was draining. Dr. Austra was engaged as plaintiff's physician on February 14, 1942.

Dr. Austra sent plaintiff to the Locust Mountain Hospital at Shenandoah for X-rays on February 17, 1942. The X-rays revealed a fracture of the condylar process of the lower jaw, which is the process that goes into the formation of the joint. The fracture was about three quarters of an inch from the formation of the joint and about one and three quarters of an inch from the socket of the extracted tooth. Another picture was taken on March 13, 1942 which showed that the fracture had partially united. It also disclosed a localized bone abscess in the area where the tooth had been extracted. This abscess was about three quarters of an inch in diameter and contained a piece of dead bone, or sequestrum. Two more X-ray pictures were taken on March 24, 1942. These pictures disclosed that the fracture had united but that the abscess was still present; that there still was a piece of dead bone in the abscess; but that the dead bone was not as large as it had been on March 13. It was explained that the tendency is for dead bone to be absorbed.

On April 2, 1942, the plaintiff was admitted to the Presbyterian Hospital, Philadelphia, Pa., where a section of bone from the right side of her lower jaw was removed by a surgeon.

The plaintiff alleged two specific acts of negligence: (a) the use of unwarranted force in extracting plaintiff's tooth resulting in the fracture of the jaw, (b) the lack of care in treating the jaw following the extraction.

The learned court below decided that there was no evidence presented to establish the standard of care;

skill, and diligence required in the practice of the dental profession at the time and place of the extraction. The court correctly said (p. 170a): "All that is shown is that the defendant did certain things and failed to do other things. But whether a careful, skilful, and diligent practitioner would have done otherwise, we do not know."

The plaintiff concedes the accuracy of the principle of law thus applied. It is argued, however, that a jury of laymen under the present facts could find negligence in the same manner as in any other tort action. It is urged that a lay jury might find that plaintiff's jaw was found to have been broken, and from this fact might conclude that defendant had used unwarranted force and was therefore negligent. We disagree with such doctrine.

*Laymen* cannot be required to decide what amount of force is necessary to extract a tooth under any given set of circumstances. The degree of force to be used is an integral part in the *technique* of extracting teeth. This professional technique is developed only after study and practice under men of experience. Negligence may not be *inferred* by *laymen* merely because the jaw was found to have been broken. A jaw could be broken even though there was no lack of care or skill by the dentist.

*Expert* testimony is necessary to establish negligent practice in any profession: *Wohlert v. Seibert,* 23 Pa. Superior Ct. 213; Wigmore on Evidence, Third Edition, Vol. VII, Sec. 2090, p. 453. As plaintiff failed to offer any *expert* witness to establish the measure of professional skill required of a dentist in extracting a tooth, she did not meet the burden of establishing, by the weight of the evidence, that defendant failed to treat her with reasonable and ordinary professional skill: *McCandless v. McWha,* 22 Pa. 261; *Nixon et ux. v. Pfahler,* 279 Pa. 377, 124 A. 130; *McCartney et ux. v. Hyman et al.,* 134 Pa. Superior Ct. 524, 4 A. 2d 581.

Plaintiff presents no argument in the brief concerning defendant's alleged negligence in treating plaintiff *after* the extraction. Here again the burden was on plaintiff to show that the defendant failed to use reasonable care, skill and diligence. The record discloses no testimony as to the standard of care required under the circumstances and such burden was therefore not met by plaintiff.

In all such *malpractice cases* this Court has uniformly applied the above principles: *McCandless v. McWha,* supra; *Williams v. LeBar,* 141 Pa. 149, 21 A. 525; *English v. Free,* 205 Pa. 624, 55 A. 777; *Stemons v. Turner,* 274 Pa. 228, 117 A. 922; *Saltzer v. Reckord,* 319 Pa. 208, 179 A. 449; *Duckworth et al. v. Bennett,* 320 Pa. 47, 181 A. 558; *Ward et al. v. Garvin,* 328 Pa. 395, 195 A. 885. See also: *Wohlert v. Seibert,* supra; *Barnard v. Schell,* 85 Pa. Superior Ct. 329; *Moscicki v. Shor,* 107 Pa. Superior Ct. 192, 163 A. 341; *McCartney et ux. v. Hyman et al.,* supra.

The judgment is affirmed.