Micheal A. GINDRAW

v.

Dr. Ralph DENDLER.

Civil Action No. 96–1496.

United States District Court,
E.D. Pennsylvania.

June 20, 1997.

As Corrected July 3, 1997.

Michael A. Gindraw, Frackville, PA, Pro Se.

Randall J. Henzes, Office of Attorney General, Philadelphia, PA, for Defendant.

### *AMENDED MEMORANDUM*

DuBOIS, District Judge.

This matter is before the Court on the Motion for Summary Judgment of defendant, Dr. Ralph Dendler. The case arises out of a claim by plaintiff, an inmate at the State Correctional Institution at Mahanoy at the time in question, that defendant, a dentist, violated plaintiff's civil rights in connection with the treatment of plaintiff's dental problems.

Plaintiff asserts federal claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986. In addition, he makes two state law claims. The first is a claim for negligence and gross negligence, treated by the Court as a medical malpractice claim. The second is a claim for assault and battery.

The Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

For the reasons set forth below, defendant's Motion for Summary Judgment will be granted in part and denied in part. Moreover, the Court will dismiss several of plain-

tiff's state law claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

### A. Facts

Plaintiff's claims are based on three visits to defendant for dental care in 1995. The first visit took place on August 29, 1995, at which time defendant filled two of plaintiff's teeth. The second and third visits were both in September. Defendant pulled a tooth from plaintiff's upper jaw on September 13, 1995. Plaintiff alleges that defendant pulled the wrong tooth at that time, and that the tooth causing the problems that led to that visit was adjacent to the tooth that was pulled. A tooth in plaintiff's lower jaw was pulled during a visit on September 27, 1995. During the extraction of that tooth, the tooth broke and defendant was unable to remove the roots of that tooth from plaintiff's jaw. Plaintiff also alleges that while extracting the tooth that broke, defendant chipped one of plaintiff's top teeth and almost broke plaintiff's jaw.

The Amended Complaint contains six claims arising from the above described dental treatment. Plaintiff requests compensatory and punitive damages.

### B. Claims

The six claims set forth in the Amended Complaint are as follows:

Count I is a civil rights claim under 42 U.S.C. § 1983 in which plaintiff alleges a violation of the Eighth Amendment by reason of defendant's deliberate indifference to plaintiff's dental needs.

Count II alleges defendant subjected plaintiff to "unlawful and malicious physical and verbal abuse" that was "motivated by racial animus" and that defendant's actions deprived plaintiff of his right to full and equal benefits of the law as enjoyed by white citizens in violation of the Fourteenth Amendment and 42 U.S.C § 1981.

Count III alleges that defendant violated 42 U.S.C. § 1985 by depriving plaintiff of the privileges, immunities and equal protection guaranteed by the Constitution and laws of the United States. The privileges plaintiff was allegedly denied include: (1) The right to be free from "cruel and unusual punishment; (2) withholding adequate medical care; (3) negligence and gross negligence; and (4) performing surgery that he [Dendler] was not qualified to perform."

Count IV alleges that defendant failed to exercise reasonable diligence in violation of 42 U.S.C § 1986. To proceed under that statute a claimant must offer evidence of a violation of 42 U.S.C § 1985. Thus, the Court will treat Count IV as alleging a failure to exercise reasonable diligence in trying to prevent the acts complained of in Count III.

Finally, the Court notes that plaintiff sets forth two state law claims in paragraph two of the Amended Complaint. His first state law claim is based on negligence and gross negligence. The Court will treat that claim a claim of medical malpractice. Plaintiff's second state law claim is for assault and battery.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law [,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor."

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (citing *Anderson* and *Celotex Corp.*).

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). On the other hand, if reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

## III. DISCUSSION

### A. Count I—Eighth Amendment Violation

#### 1. Legal Framework

█ The Third Circuit, applying *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), has noted that a constitutional violation arising from improper medical treatment only exists if two conditions are met: first, there must be "deliberate indifference on the part of prison officials and [second,] the prisoner's medical needs [must] be serious." *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978). Furthermore, the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." (citing *Youngberg v. Romeo,* 457 U.S. 307, 322–23, 102 S.Ct. 2452, 2461–62, 73 L.Ed.2d

28 (1982))). Finally, the Third Circuit has noted that the *Estelle* standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979).

#### 2. Defendant's Actions Do Not Evidence Deliberate Indifference

Defendant's Declaration sets forth the details of his examination and treatment of plaintiff on the three dates at issue in the case. On August 29, 1995 defendant examined plaintiff who complained of pain on the left side of his mouth, causing headaches. Defendant determined plaintiff had cavities in teeth fourteen and fifteen,[1] both upper teeth on the left side of the mouth, and placed a temporary filling in each tooth. Defendant's Motion for Summary Judgment, Exhibit 2, Declaration of Ralph Dendler at ¶ 4 ("Declaration"); *see also* Defendant's Motion for Summary Judgment, Exhibit A, Dental Records, at 5 ("Records") (recording examination of teeth fourteen and fifteen and noting cavities). During the same visit defendant discovered a cavity and an abscess in the root of tooth eighteen, a lower tooth. Declaration, at ¶ 4.; *see also* Records, at 5 (noting abscess and pain). On September 13, 1995, defendant saw plaintiff for a second time, at which time defendant noted that plaintiff still complained of pain in tooth fourteen, one of the teeth treated in August. Defendant removed what he believed to be the tooth causing the pain (number fourteen). Declaration, at ¶ 5; *see also* Records, at 5 (noting pain and extraction of tooth fourteen).

During the third visit, on September 27, 1995, plaintiff still complained of pain in the left side of his mouth. Declaration, ¶ 6. Defendant examined plaintiff at that time and determined that tooth fifteen was sensitive to hot and cold items and that tooth eighteen needed to be extracted. Declaration, at ¶ 6; *see also* Records, at 5 (noting tooth fifteen was sensitive and extraction of eighteen). Defendant removed tooth eighteen but was

---

**1.** Teeth are numbered from left to right, starting at the top left of the mouth and finishing at the

bottom left. Defendant's Motion for Summary Judgment, Exhibit A, Dental Records.

unable to remove the roots of that tooth; he suggested that plaintiff see an oral surgeon to have the roots removed. Declaration, at ¶ 6. In the interim, defendant prescribed pain medication and antibiotics.[2] *Id.*

■ Although plaintiff's deposition testimony evidences a quarrel with the quality of treatment he received, it does not contradict defendant's Declaration and clearly evidences defendant's extensive efforts to treat plaintiff's dental problems. Defendant's Motion for Summary Judgment, Exhibit 1, Deposition of Michael Gindraw, ("Gindraw Deposition"). The number of examinations conducted by defendant, defendant's extensive treatment of plaintiff, including the extraction of two teeth, defendant's referral of plaintiff to another physician, and the prescription of medication is more than sufficient to establish that defendant was not deliberately indifferent to plaintiff's dental needs.

Plaintiff may be dissatisfied with the treatment he received, but it is clear that he was treated extensively. Deliberate indifference is a prerequisite for an Eighth Amendment improper medical treatment claim, and plaintiff has failed to provide evidence that, if believed by a reasonable fact-finder, would establish that essential element in this case. *West,* 571 F.2d at 161 (stating that deliberate indifference is an essential element in an Eighth Amendment improper medical treatment claim). Accordingly, the Court will grant defendant's Motion for Summary Judgment on Count I.

## B. Medical Malpractice Claims

### 1. Legal Framework

■ There are four elements to the *prima facie* case of medical malpractice in Pennsylvania: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing

about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 250, 661 A.2d 397, 399 (1995) (citing *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990)). These requirements are applicable to a case such as this one in which dental care is at issue. *See, e.g., Dierolf v. Slade,* 399 Pa.Super. 9, 581 A.2d 649 (1990).

■ Furthermore, under Pennsylvania law, allegations of medical malpractice generally may not be proven without the testimony of " 'an expert witness who will testify, to a reasonable degree of medical certainty, that the act of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.' " *Hoffman,* 443 Pa.Super. at 250, 661 A.2d at 399–400 (quoting *Mitzelfelt,* 526 Pa. at 62, 584 A.2d at 892); *see also Brannan v. Lankenau Hospital,* 490 Pa. 588, 595, 417 A.2d 196, 199 (1980) ("[plaintiff] must introduce expert testimony to show that [the] physicians' conduct varied from accepted medical practice") (citations omitted); *Maurer v. Trustees of University of Pennsylvania,* 418 Pa.Super. 510, 516, 614 A.2d 754, 757 (1992), *appeal granted,* 534 Pa. 640, 626 A.2d 1158 (1993) (collecting cases and stating that "a plaintiff cannot establish a *prima facie* case of medical malpractice without, *inter alia,* presenting an expert witness").

■ No expert witness is needed to prove a case of medical malpractice, however, " 'where the matter and investigation is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience or comprehension of even non-professional persons.' " *Hoffman v. Mogil,* 445 Pa.Super. 252, 256–57, 665 A.2d 478, 480 (1995) (quoting *Chandler v. Cook,* 438 Pa. 447, 265 A.2d 794 (1970)). Such cases may include leaving a gauze pad in a patient following an operation, *Lambert v.*

2. According to defendant's Declaration, plaintiff was examined by an oral surgeon on October 25, 1995, at which time plaintiff advised the oral surgeon that the tooth (number eighteen) felt fine and that he did not want the roots removed. Declaration, at ¶ 7. The oral surgeon noted that the area was healing and plaintiff signed a form

refusing medical treatment. *Id.;* Motion for Summary Judgment, Exhibit A, Dental Records, at 3 (Release from Responsibility for Medical Treatment). Plaintiff was informed that by refusing treatment he risked infection and might experience pain. Declaration, at ¶ 7.

*Soltis,* 422 Pa. 304, 308, 221 A.2d 173, 176 (1966) (citing *Demchuk v. Bralow,* 404 Pa. 100, 104, 170 A.2d 868, 870 (1961)), or when a dentist, while "working on a tooth, uses a tool with a small rotating emery disc at the end and allows it to slip and to remain revolving in the patient's mouth, grinding and tearing her tongue." *Id.* (quoting *Dux v. Shaver,* 105 Pa.Super. 344, 346–47, 161 A. 481, 482 (1932)); *see also Hunter v. Robison,* 488 S.W.2d 555, 560 (Tex.Civ.App.1972) (stating that the exception applies to cases where "the negligence 'is obvious to the untrained layman, [such as leaving surgical instruments or sponges in the incision or operating on the wrong portion of the body[.]]' ") (quoting *Henderson v. Mason,* 386 S.W.2d 879, 882 (Tex.Civ.App.1964)).

Plaintiff alleges two instances of malpractice: (1) Defendant extracted the wrong tooth when he pulled tooth fourteen; and (2) during the extraction of tooth eighteen defendant broke the tooth, left the roots of the tooth in his mouth, almost broke his jaw, and broke the tooth above tooth eighteen. The Court will address plaintiff's second claim first.

### 2. Plaintiff Has Failed to Present Evidence that Defendant Committed Malpractice in Removing Tooth Eighteen

Plaintiff states that he complained of pain in two teeth during the examination of August 29, 1995; both of those teeth were on the left side of his mouth—one on the top and one on the bottom (number eighteen). Gindraw Deposition, at 7. On September 13, 1995, plaintiff again was examined by defendant, at which time he complained about the same two teeth. *Id.,* at 8. On September 27, 1995, defendant extracted tooth eighteen. *Id.,* at 12. Plaintiff alleges that during that extraction "the tooth broke off and fell on the floor somewhere. I don't remember where half of the tooth ended up at. Then he [defendant] proceeded to pull the roots out, which in doing that, the way I consider, he almost broke the other side of my jaw." *Id.,* at 13. Plaintiff further alleges that during the extraction of tooth eighteen defendant's "hand slipped and hit the tooth that was above it; and it chipped the tooth off." *Id.,* at 18. Defendant admits that he extracted

tooth eighteen but was "not able to remove the roots." Declaration, at ¶ 6. No evidence beyond plaintiff's testimony supports the alleged chipping of another tooth or his allegation that his jaw was almost broken.

In *Gentile v. Devirgilis,* 290 Pa. 50, 138 A. 540 (1927), a plaintiff sued her dentist for fracturing her tooth during extraction and leaving a portion of the root still in the jaw. The Supreme Court of Pennsylvania ruled that

> the mere fact that the tooth fractured in the extraction and that part of the root remained in the jaw, was not of itself, any evidence of lack of skill on the part of the defendant. This it was testified is a common occurrence in extracting teeth. The failure to extract the root at the time when he pulled the other teeth is the basis on which recovery is sought. We are of the opinion that a finding of negligence on this basis could not be sustained under the evidence. *Id.,* 138 A. at 540.

■ Under *Gentile,* and in the absence of an expert report to the contrary, the fact that defendant broke tooth eighteen while extracting it and left the tooth's roots in plaintiff's jaw is not evidence of malpractice. *See supra* Part III.B.1. (setting forth the law with respect to the need for experts in medical malpractice cases). The process of extracting teeth is complicated and technical and beyond the scope of the knowledge of laymen. The Court concludes that summary judgment must be granted with respect to plaintiff's allegations that defendant nearly broke his jaw and chipped one of his teeth when he pulled tooth eighteen because plaintiff has not provided an expert opinion that those results constitute malpractice.

The Pennsylvania Supreme Court has ruled that an expert witness is necessary to determine whether a dentist committed malpractice by using more force than is necessary to extract a tooth. *See Bierstein v. Whitman,* 360 Pa. 537, 62 A.2d 843, 844–45 (1949). The *Bierstein* court reasoned that "laymen cannot be required to decide what amount of force is necessary to extract a tooth under any given set of circumstances. The degree of force to be used is an integral part in the technique of extracting teeth.

This professional technique is developed only after study and practice under men of experience." *Id.,* 62 A.2d at 844. Plaintiff in this case has not provided such an expert.

Although plaintiff is proceeding *pro se,* his failure to provide an expert is inexcusable in light of the many opportunities the Court provided plaintiff to obtain the report of such a witness. The Court first ordered the submission of an expert witness report by plaintiff in a Scheduling Order dated June 28, 1996. Pursuant to that Order plaintiff was to "provide defendant with a copy of the report of his expert witness in dentistry on or before August 19, 1996. If plaintiff require[d] additional time he [was to] request it on or before August 19, 1996." On August 23, 1996 the Court issued an Amended Scheduling Order, in which plaintiff was ordered to "provide defendant with a copy of the report of his expert witness in dentistry on or before October 3, 1996." The court again gave plaintiff the opportunity to request more time if necessary.

Plaintiff encountered difficulty in collecting the medical records necessary to obtain an expert opinion and he wrote to the Court for assistance on December 6, 1996. On December 16, 1997 the Court again provided plaintiff more time to produce an expert report but stated "that in the event plaintiff does not submit the report of an expert witness to defense counsel and to the Court on or before January 30, 1997, or request additional time for doing so, stating reasons, on or before that date, the Court will proceed to decide the pending Motion for Summary Judgement on the present state of the record." The Court issued a similar Order on December 27, 1996, again extending the time plaintiff had to produce an expert: "in the event plaintiff does not submit the report of an expert witness to defense counsel and to the Court on or before February 17, 1997, or request additional time for doing so, stating reasons, on or before that date, the Court will proceed to decide the pending Motion for Summary Judgement on the present state of the record."

Plaintiff sent two additional letters to the Court, dated January 1st and February 11, 1997, in which he explained that he was still having trouble collecting the necessary medical records. On February 19, 1997, the Court ordered defendant to provide plaintiff with such x-rays taken by the prison dentist and the medical report associated with the x-rays. That Order again extended the time within which plaintiff was to submit an expert report, granting him until March 20, 1997 to do so and providing that "[i]n the event that plaintiff requires additional time for submitting such papers, he must request additional time, stating reasons, on or before March 20, 1997. In the event plaintiff does not submit the report of an expert witness in dentistry ... or request additional time for doing so before that date, the Court will proceed to decide the pending Motion for Summary Judgment on the present state of the record." As of this date, plaintiff has failed to submit such a report.

In sum, because plaintiff has not provided an expert report with respect to his allegations that defendant nearly broke his jaw and chipped one of his teeth while removing tooth eighteen, despite ample opportunity to do so, the Court will grant defendant's Motion for Summary Judgment on plaintiff's medical malpractice claim to the extent it arises from the extraction of tooth eighteen.

**3. Plaintiff Has Presented Sufficient Evidence that Defendant Extracted the Wrong Tooth on September 13, 1995 to Withstand Defendant's Motion for Summary Judgment**

Plaintiff's second allegation of malpractice is that defendant removed the wrong tooth when he extracted tooth fourteen on September 13, 1995. In plaintiff's deposition he explains that during that visit to defendant he had pain in the same two teeth he had complained about in August—a tooth on the lower left side of his jaw and a tooth on the upper left side of his jaw. Gindraw Deposition, at 7–8. Plaintiff alleges that although he told defendant which upper tooth hurt, defendant extracted the wrong upper tooth. *Id.* The Deposition continues:

Q: And that is your contention. When you're saying that

he pulled the wrong tooth, he should have pulled—

A: Tooth No. 15

Q: Instead of tooth No. 14?

A: Exactly.

Q: He pulled 14, which was on the top?

A: Right.

Q: And that's the one you're saying was the wrong one?

A: Exactly.

Q: He should have pulled 15?

A: He should have pulled 15.

*Id.*, at 11–12. Plaintiff also states that he was never told which tooth was to be pulled. *Id.*, at 9–12. However, plaintiff signed a consent form on September 13, 1997 that clearly states tooth fourteen was to be extracted. Records, at 2 (Consent to Operation or Other Medical Procedure).

Defendant disagrees with plaintiff, stating that defendant saw plaintiff on September 13, 1995, at which time plaintiff was still complaining of pain in tooth fourteen. Declaration, at ¶ 5. Defendant alleges that, after getting written consent from plaintiff, he removed that tooth (number fourteen). *Id.* On plaintiff's second September visit, defendant noted that plaintiff was still complaining of pain in the left side of his mouth. Declaration, at ¶ 6. Defendant determined, at that time, that tooth fifteen, the tooth plaintiff alleges hurt him all along and should have been pulled, was sensitive to hot and cold items. *Id.*

▮ The Court will deny defendant's Motion for Summary Judgment on the claim that defendant pulled the wrong tooth when he extracted tooth fourteen because the evidence is sufficient to raise a genuine issue of material fact. Attempting to avoid that result, defendant urges the Court to grant summary judgment on the ground that the issue of pulling the wrong tooth is not so simple and obvious as to be comprehensible to a layman and, therefore, plaintiff's failure to obtain an expert opinion is fatal to his claim. Defendant's Motion for Summary Judgment Part B.2. The Court rejects defendant's position.

Although a close question because the teeth at issue are side-by-side, the Court concludes that this claim should be allowed to proceed despite plaintiff's failure to obtain an expert report. The record does not provide sufficient detail as to what information plaintiff gave defendant before tooth fourteen was extracted. Without such information, the Court cannot determine whether an expert is necessary to determine whether removing that tooth was malpractice or whether doing so was such an obvious mistake as to obviate the need for such testimony. Thus, defendant's Motion for Summary Judgment will not be granted, although that denial will be without prejudice to defendant's right to raise this issue at trial.

## C. Assault and Battery Claim

▮ Defendant does not address plaintiff's claim of assault and battery in his Motion for Summary Judgment. Performing a medical procedure without informed consent is a technical assault and battery. *Gouse v. Cassel*, 532 Pa. 197, 615 A.2d 331 (1992); *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). Thus, if defendant removed the wrong tooth, he may have committed an assault and battery. For that reason the assault and battery claim will be allowed to proceed.

## D. Counts II, III, and IV Fail to State Claims Under 42 U.S.C. §§ 1981, 1985, and 1986 Upon Which Relief Can Be Granted

### 1. 28 U.S.C. § 1915(e)(2)(B)(ii) Applies to the Instant Case

Under 28 U.S.C. § 1915(e)(2)(B)(ii), in a case in which a prisoner is proceeding *in forma pauperis*, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). By Order dated March 7, 1996 this Court granted plaintiff *in forma pauperis* status. Section 1915(e)(2)(B)(ii), however, was enacted as part of the Prison Litigation Reform Act of 1995, Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (Apr. 26,

1996), and took effect on April 26, 1996—almost two months after plaintiff was granted *in forma pauperis* status. Thus, the Court must consider whether § 1915(e)(2)(B)(ii) is applicable to the instant case.

■ The question of § 1915(e)(2)(B)(ii)'s application to cases pending before it became effective is a question of first impression in the Third Circuit. Informed by the Ninth Circuit's decision in *Marks v. Solcum,* 98 F.3d 494, 496 (9th Cir.1996) (per curiam), and the Eleventh Circuit's decision in *Mitchell v. Farcass,* 112 F.3d 1483 (11th Cir.1997), the Court concludes that § 1915(e)(2)(B)(ii) should be applied to cases filed before April 26, 1996, including the case *sub judice.*

An inquiry as to whether a statute should be applied retroactively is controlled by the Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The first question that must be asked under *Landgraf* is "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280, 114 S.Ct. at 1505. Congress has not prescribed the reach of § 1915(e)(2)(B)(ii). *See Mitchell,* 112 F.3d at 1486–87. Having answered the first question in the negative, the Court must determine whether the application of § 1915(e)(2)(B)(ii) to cases pending before its effective date "would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505.

It is beyond dispute that § 1915(e)(2)(B)(ii) does not increase liability or impose new duties upon plaintiff. Therefore, the question before this Court is whether § 1915(e)(2)(B)(ii) to cases pending when that section became effective "impair[s] rights a party possessed when he acted."

The Third Circuit considered when a statute has a retroactive effect in light of the *Landgraf* standard in *Scheidemann v. Immi-*

*gration and Naturalization Service,* 83 F.3d 1517 (3d Cir.1996). In *Scheidemann* the Third Circuit isolated the primary concern addressed by *Landgraf,* stating that " '[i]n general, the concern regarding retroactive application of statutes is the deprivation of rights without notice and fair warning.' " *Id.,* at 1523 (quoting *De Osorio v. Immigration and Naturalization Service,* 10 F.3d 1034, 1042 (4th Cir.1993)). No such concerns are raised by the application of § 1915(e)(2)(B)(ii) to the instant case. Plaintiff is not being deprived of a right without notice and fair warning. No litigant has a right to have a district court hear a claim upon which relief cannot be granted. *See* Fed.R.Civ.P. 12(a) and 12(b)(6). In enacting § 1915(e)(2)(B)(ii) Congress has simply changed the time frame[3] within which such a dismissal may be ordered—it has *not* changed the substantive requirements that must be met in order to avoid such a dismissal. Such a change surely does not impair any rights held by a plaintiff.

Moreover, section 1915(e)(2)(B)(ii) is wholly procedural. *See Mitchell,* 112 F.3d at 1487; *Marks,* 98 F.3d at 496 ("section 1915(e)(2) is a procedural rule"). Thus, there is a strong presumption that § 1915(e)(2)(B)(ii) may be applied to cases pending before its enactment, as the *Landgraf* court noted. *Landgraf,* 511 U.S. at 275, 114 S.Ct. at 1502 ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."). Because § 1915(e)(2)(B)(ii) is wholly procedural, and does not impair plaintiff's rights, there is no reason to deviate from this presumption. *See Marks,* 98 F.3d at 496 (holding that 28 U.S.C. § 1915(e)(2) applies to all appeals regardless of whether the complaint or notice of appeal was filed before the effective date of that section); *see also Mitchell,* 112 F.3d at 1487 ("We agree with the Ninth Circuit that section 1915(e)(2) 'raises no retroactivity concerns under *Landgraf.*' " (quoting *Marks,* 98 F.3d at 496)). And, because

---

**3.** Before the enactment of § 1915(e)(2)(B)(ii) a claim could be dismissed for failure to state a claim upon which relief can be granted only upon motion made under Federal Rule of Civil Procedure 12(b)(6). In most cases, such a motion had to be filed within twenty days after a defendant was served with a summons and complaint. Fed.R.Civ.P. 12(a)(1)(A).

§ 1915(e)(2)(B)(ii) does not have an impermissible retroactive effect, it should be applied to the instant case.

## 2. Count II Fails to State an Equal Protection Claim Under 42 U.S.C. §§ 1981 Upon Which Relief Can Be Granted

Plaintiff, who is black, attempts to state an equal protection claim based on defendant's deprivation of his right to full and equal benefits of the law as enjoyed by white citizens in violation of the Fourteenth Amendment and 42 U.S.C. § 1981. The Court notes that although plaintiff attempts to state a claim under the "equal benefits"[4] clause of § 1981, his claim should have been brought under the "like punishment" clause.[5] *See Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir.1977) (considering the scope of § 1981). However, the Court need not address that issue because plaintiff has failed to state a claim upon which relief can be granted under any part of § 1981.

■ Plaintiff fails to make a single factual allegation which supports, or even suggests, that racial discrimination was a factor in the incidents underlying this lawsuit. Such allegations are an essential element of any § 1981 claim. Because plaintiff has failed to make such an allegation, he has failed to state a claim under 42 U.S.C. § 1983 upon which relief can be granted.[6]

## 3. Count III Fails to State a Claim under 42 U.S.C. § 1985 Upon Which Relief Can Be Granted

Count III purportedly states a claim under 42 U.S.C. § 1985. Plaintiff does not state under which subsection of § 1985 he makes his claim. However, it appears that plaintiff is attempting to proceed under § 1985(c) because he claims that defendant deprived him of the privileges, immunities, and equal protection guaranteed by the Constitution and laws of the United States, which is the language used in subsection "c" to describe the protected rights. However, the Court need not make this determination because each subsection of § 1985 begins with the words "If two or more persons in any State or territory conspire...." It is those words that are at the heart of plaintiff's failure to state a claim upon which relief can be granted.

■ Plaintiff has only named one defendant in this case and he makes no factual allegations as to the involvement of other people in the dental treatment underlying this lawsuit. Because § 1985 only applies to conspiracies between two or more people, and because plaintiff does not make factual allegations that include at least two people, he has failed to state a claim under § 1985 upon which relief can be granted.

## 4. Count IV Fails to State a Claim Under 42 U.S.C. § 1986 Upon Which Relief Can Be Granted

■ In Count IV plaintiff alleges that defendant failed to exercise reasonable diligence in violation of 42 U.S.C. § 1986. Section 1986 provides, *inter alia*

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having

---

4. The "equal benefits" clause reads as follows: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

5. The "like punishments" clause reads as follows: "All persons within the jurisdiction of the United States shall ... in every State and Territory ... be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

6. Because the Court concludes that the claim plaintiff purports to set forth under § 1981 fails to state a claim upon which relief can be grant-

ed, the Court need not address the question of whether the 1991 amendments to the Civil Rights Act overruled the Supreme Court holding in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), that claims asserting a violation of § 1981 against a state actor cannot be brought independently but rather must be made under § 1983. *See, e.g., Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996) (addressing, and collecting cases that address, the question of whether the 1991 amendments to the Civil Rights Act overruled *Jett* in whole, in part, or not at all).

power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act committed, shall be liable. . . .

A violation of § 1986 requires an underlying violation of 42 U.S.C. § 1985. The Court has dismissed plaintiff's claim under § 1985 for failure to state a claim upon which relief can be granted. Because of that dismissal, plaintiff cannot establish a violation of § 1986. Therefore, plaintiff has failed to state a claim under § 1986 upon which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above:

1) Defendant's Motion for Summary Judgment will be granted with respect to Count I of the Amended Complaint;

2) Defendant's Motion for Summary Judgment will be granted with respect to plaintiff's medical malpractice claim included in paragraph 2 of the Amended Complaint to the extent it relates to the extraction of tooth eighteen on September 27, 1995;

3) Defendant's Motion for Summary Judgment will be denied with respect to plaintiff's medical malpractice claim included in paragraph 2 of the Amended Complaint to the extent it relates to the extraction of tooth fourteen on September 13, 1995, without prejudice to defendant's right to raise at trial the issues presented in the Motion;

4) Plaintiff's assault and battery claim included in paragraph 2 of the Amended Complaint, which is not the subject of the Motion for Summary Judgment, will be allowed to proceed to trial; and,

5) Count II, Count III, and Count IV of the Amended Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.[7]

An appropriate order follows.

---

7. The Court notes that all of plaintiff's remaining claims arise under state law. Due to the advanced posture of the litigation, the Court will exercise its discretion to keep jurisdiction over the case.